# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00558-CR

**Ismael Romero, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT NO. 005859, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Ismael Romero was convicted of assaulting his wife Christina Romero. After the assault, Christina[1] made various statements to the police describing the assault and filed for several protective orders. Christina's statements and the protective orders were admitted at trial, but Christina testified that her previous statements were false and insisted that Ismael did not assault her. Ismael appeals his conviction, arguing that he was denied effective assistance of counsel and that the evidence is legally and factually insufficient to support his conviction. We will affirm the judgment of the district court.

## BACKGROUND

Around 9:30 p.m. on August 4, 2000, Christina called the police to report that her husband, Ismael, had assaulted her. Officers Ottensmeier and Bryant responded to the call. Officer

---

[1] Because of identical last names, we will use the first names of many of the individuals involved in this case.

Ottensmeier was the first to arrive on the scene and saw Christina and her two-year old daughter sitting outside their home. He questioned Christina about the events of the evening and filled out a police report. Because Christina stated that she was too upset to fill out a victim impact statement, Officer Ottensmeier wrote down her description of the assault. The officer showed the report to Christina, and she signed the statement.

At trial, he testified regarding statements Christina made to him on the night of the assault. First, Christina told him that, when Ismael came home, he became upset when he found Christina and their daughter outside the house. Christina also told the officer that Ismael was intoxicated. Next, she related that Ismael grabbed her and threw her through the front door of their house. Further, Christina stated that, in an attempt to flee from Ismael, she ran to the bedroom with her daughter but that Ismael entered the room immediately after her and grabbed the gun the couple kept there. Finally, she stated that Ismael pointed the gun at her, approximately 12 inches from her chest, and threatened to kill her;[2] that she subsequently ran down the hallway with her daughter; and that, after she ran, Ismael drove off in his car.

Officer Bryant arrived at the Romeros' house shortly after Officer Ottensmeier. He also testified regarding statements Christina made to him on the night of the assault. He stated that he was the backup officer for Ottensmeier and that, when he arrived on the scene, Christina told him that Ismael had threatened her with a gun and that she believed the gun was still in the bedroom.

---

[2] During his testimony, Officer Ottensmeier read portions of his offense report that he wrote while talking with Christina. According to the report, Christina stated Ismael made the following threatening statement: "You bitch, I will kill you, and then I'll run to the border, and no police will get me."

2

After entering Christina's bedroom, Officer Bryant found a gun lying on the bed, and he removed the gun from the premises.

Officer Ottensmeier informed Christina that, because the incident involved family violence, she could seek an emergency protective order. She stated that she would like to request an order. While Officers Ottensmeier and Bryant were still at the house, Ismael returned home. Officer Ottensmeier arrested Ismael and drove him to the police station. At trial, Officer Ottensmeier testified that, when he arrested Ismael, he smelled alcohol. After Officer Ottensmeier left, Officer Bryant remained at the Romero house until a counselor from victims' services arrived.

A few days after the assault, Detective Boward contacted Christina. Detective Boward was an investigator for the family violence unit and had been assigned to Christina's case. At trial, he testified that he met with Christina a few days after the incident and that she asked for an emergency protective order.[3] As part of the application, Christina filled out a written statement and signed it in front of Detective Boward. The statement was admitted into evidence, and the information in the statement comports with the description of the assault that she gave to Officer Ottensmeirer, including the use of a gun.

After Christina filled out the application, an emergency protective order was issued prohibiting Ismael from making contact with his wife for 60 days. In the order, the court found that

---

[3] An application for an emergency protective order is filed by either a victim or the police in response to an incident of family violence. Tex. Code Crim. Proc. Ann. art. 17.292 (West Supp. 2006). An emergency protective order mandates a period of separation for the individuals involved in the incident and generally lasts between 30 and 60 days. *Id.*

there was a clear and present danger that Ismael could commit an act of family violence before a hearing could be held. This order was admitted into evidence during Ismael's trial.

Tina Clark, a social worker employed with the victims' services department of the Austin Police Department, also contacted Christina about the assault. Clark testified that she gave Christina information regarding final protective orders[4] and shelters. After talking with Clark, Christina went to the county attorney's office and applied for a final protective order. At trial, Deborah Nunez, an employee of the victim/witness division of the county attorney's office, testified that she helped Christina fill out and file the application.

After Christina filed the application, a hearing on the final protective order was held in October 2000. Both Christina and Ismael testified at the hearing. Assistant county attorney Sharon Brooks represented Christina in the final protective-order hearing and testified about the hearing at Ismael's trial. The court issued a final protective order prohibiting Ismael from having contract with Christina. The court also found that Ismael engaged in an act of family violence and that it was likely Ismael would engage in similar conduct in the future. The final protective order was entered into evidence at Ismael's trial.[5] In November 2000, Christina reported that Ismael had violated the protective order.

---

[4] In contrast to an emergency protective order, a final protective order can be issued at the request of a victim of family violence and lasts up to two years. *See* Tex. Fam. Code Ann. § 82.02 (West 2002).

[5] The court concluded that the protective orders might assist the jurors in determining whether Christina's initial statements or subsequent testimony were true and concluded that the relevance outweighed any unfair prejudicial value. Further, the court stated that the exhibits had, "in effect," already been admitted through the testimony of various witnesses.

Several months after the final protective order was issued, Christina filed an affidavit of non-prosecution. In the affidavit, Christina specified that she requested a protective order because she was angry with Ismael and that she did not know what was written in the application because the counselor had filled out the form. She also stated that the Ismael had never used a gun during their argument. Finally, Christina requested that the final protective order be revoked. The affidavit was admitted into evidence at Ismael's trial.

During the trial, Ismael's attorney called Christina, Ismael, and several character witnesses to testify. Ismael's employer testified that Ismael is "one of his best employees," is never late, and does not have a problem with alcohol. Benito Melendez, who is Christina's father, testified that Ismael was a "very nice man" and that he had never observed any problems between Christina and Ismael. He also stated that Christina takes medication for "nerve" and "temper" problems. Further, he opined that Ismael is probably afraid of Christina because of her temper. On cross, Melendez admitted that he had been told that Ismael had recently been convicted of violating the final protective order.[6]

Christina also testified on behalf of Ismael. Although she admitted she previously made inconsistent statements, Christina testified that the accusations she made against Ismael were false and that Ismael never threatened her or pointed a gun at her. Furthermore, Christina insisted that, on the night of the assault, Ismael's gun was never removed from the closet. Rather, she stated that she caused the argument because she was angry with Ismael for coming home late and that she

---

[6] After the final protective order issued, Christina informed the police that Ismael violated the protective order. Specifically, she claimed that, in November 2000, Ismael grabbed her and hurt her arm when he saw her outside a nightclub in Austin, Texas. After Christina made the complaint, a hearing was held, and Ismael was convicted of violating the protective order.

slapped Ismael. Furthermore, she testified that she takes medication to control her temper.

On cross-examination, Christina admitted that, at the protective-order hearing, she testified that she was afraid of what Ismael might do to her if she did not say that her statements to the police were lies and admitted that she is completely financially dependent on Ismael. In addition, the prosecution showed Christina the statement she had given to the police two days after the alleged assault. After Christina admitted that she remembered filling out the form and signing it, the following relevant portion was read to the jury:

> Then he got me from my arm and pushed me inside. And then he did it again. . . .
> Then he went to the room and got the gun and told me that if he want, he could show
> me and go back to Mexico. He had the gun right in my . . . body.

The prosecution then read into evidence portions of the transcript from the protective order hearing in which Christina described the assault.

After Christina denied that Ismael violated the protective orders, the State inquired about two incidents in which she had told the police that Ismael violated the emergency protective order and the final protective order. Although she admitted that she had previously testified to the contrary, she denied that Ismael violated the emergency protective order. In response, the prosecution read portions of the transcript from the protective-order hearing in which Christina described an incident where Ismael violated the emergency protective order by coming to the house and threatening her. In addition, although Christina admitted that she had previously reported that Ismael violated the final order, she insisted that her statement to the police was a lie. In her testimony, she stated that she told the police that Ismael had violated the final order in November

2000 by grabbing her and hurting her arm but emphasized that the event never happened. The incident she described was the same incident that the State referred to when it was cross-examining Christina's father.

Ruben Mendoza, Ismael's brother, also testified on behalf of Ismael. Ruben works with Ismael and testified that, on the night of the alleged assault, Ismael had not been drinking. He also testified that, ever since Ismael was arrested, Christina had been making harassing calls to him asking about Ismael. Pedro Mendoza, Ismael's other brother, also testified. He stated that, after the alleged assault, Christina began calling him and threatening him and that he had made a complaint with the police regarding the harassing phone calls.

Ismael also testified at trial. He stated that, on the night in question, Christina was angry with him and that, in an effort to prevent an argument, he grabbed her wrists and told Christina that he was going to go outside. Further, he denied removing the gun from the closet, pointing the gun at Christina, or having consumed any alcoholic beverages on the night of the alleged assault. On the contrary, Ismael insisted that it was Christina who became physically aggressive and that he believed Christina had been drinking that night. In addition, he stated that Christina was constantly threatening him and ordering him to come home despite the protective order. Finally, he testified that his wife was taking several medications "to calm her down."

At the close of trial, the jury convicted Ismael of aggravated assault with a deadly weapon (a firearm). Ismael requested that the court, rather than the jury, impose his sentence; the trial judge sentenced Ismael to three years' imprisonment. He appeals his conviction.

7

## DISCUSSION

Ismael raises two issues on appeal. In his first issue, Ismael contends that he was denied effective assistance of counsel throughout his trial. In his second issue, Ismael contends that the evidence is legally and factually insufficient to support his conviction.

**Ineffective Assistance of Counsel**

Ismael's ineffective assistance of counsel claim has four subparts. First, he argues that his trial attorney erred by failing to object to the testimony of various witnesses concerning the night of the assault, which he insists was inadmissible hearsay. Specifically, he argues that the testimony of Officers Ottensmeier and Bryant relating statements Christina made to them on the night of the assault should not have been admitted.[7]

Next, he asserts that his attorney erred by failing to object and by improperly objecting to the testimony of various witnesses concerning the protective orders that were issued, to the admission of the protective orders, and to testimony demonstrating that he violated the

---

[7] In his statement of facts, Ismael also complains that his attorney failed to object to Clark's testimony relating that Christina was afraid that Ismael was going to retaliate against her for reporting him to the police. In addition, Ismael argues that his attorney failed to object to the testimony of another officer who was sent to the Romero's house on August 4, 2000. After Officers Ottensmeier and Bryant left the Romeros' house, Christina called 911 again, and Officer Carlisle responded to the call. At trial, he testified that, when he arrived at the Romeros' house, Christina told him that she had received a threatening phone call from one of Ismael's brothers.

However, other than mentioning these alleged errors in his statements of facts, Ismael does not discuss how these actions were unreasonable or led to the rendition of an improper verdict. Rather, the portion of the discussion section of his brief discussing the admission of hearsay evidence is limited to the testimony of Officers Ottensmeier and Bryant. We hold that Ismael has failed to adequately brief these points and do not address them. *See* Tex. R. App. P. 38.1(h) (brief must contain clear and concise argument for contentions made).

protective orders. Specifically, he contends that the admitted evidence and testimony constituted impermissible evidence of extraneous offenses. *See* Tex. R. Evid. 404 (evidence of other acts not admissible to prove character to show conformity with crime alleged). Further, he argues that his attorney's objections to some of the allegedly impermissible evidence as irrelevant were improper.

Third, Ismael insists his attorney erred by failing to ask for a limiting instruction specifying the purposes for which evidence of the protective orders and Ismael's violation of the protective orders might be considered. He argues that the jury could have concluded from the evidence regarding the issuance of the protective orders and his violation of the protective orders that he possessed a violent character and improperly convicted him on that basis. Accordingly, he insists his attorney should have requested a limiting instruction stating that the jury could not consider this evidence as proof that Ismael assaulted his wife in August 2000. He also argues that his attorney should have requested a limiting instruction that specified that Christina's prior inconsistent statements were admissible only for the purpose of impeaching Christina.

Finally, he asserts that his attorney erred by not asking for a directed verdict because the evidence is insufficient to support his conviction. To support this argument, Ismael refers to a statement made by the trial judge during sentencing. The trial judge stated:

> I must concede that I have serious concerns about the quality of the evidence supporting the verdict in the assault case. The jury didn't have any such concerns, but I have concerns both factually and legally, but the sufficiency of my concerns I don't think rise to the level that the Court grants a motion for new trial in the case, but I have serious concerns.

9

In making an ineffectiveness claim, the defendant must identify the actions of his attorney that are allegedly not the result of reasonable professional judgment. *Strickland v. Washington*, 466 U.S. 668, 690 (1984). The defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for the attorney's mistakes, the outcome of the proceeding would have been different. *Id.* at 687, 694; *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland* standard). Reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If both prongs are not satisfied, the ineffective assistance of counsel claim will fail. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In reviewing an ineffectiveness claim, courts must avoid the "deleterious effects of hindsight." *Id.* The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the defendant must overcome the presumption that a challenged action might be deemed sound trial strategy. *Strickland*, 466 U.S. at 689; *see also Thompson*, 9 S.W.3d at 813 (strong presumption that trial counsel's actions fell within wide range of reasonable professional assistance); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (defendant bears burden of proving ineffective assistance). Errors in trial strategy will be deemed inadequate representation only if counsel's actions were without any plausible basis. *Parmer v. State*, 38 S.W.3d 661, 666 (Tex. App.—Austin 2000, pet. ref'd). We must also presume that the trial attorney is in a better position to judge the appropriateness of the particular decision than we are and that the attorney "'made all significant decisions in the exercise of reasonable

10

professional judgment.'" *Jackson*, 877 S.W.2d at 771 (quoting *Delrio v. State*, 840 S.W.2d 443, 444 (Tex. Crim. App. 1992)).

We first note that the record is silent regarding Ismael's attorney's trial strategy and the various tactical decisions the attorney made throughout the trial. No testimony was elicited from Isamel's attorney, and no affidavit was filed. In the absence of evidence of the reasoning for the allegedly ineffective conduct, a reviewing court will assume a strategic motive if any can be imagined, *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), and the strong presumption that the conduct was reasonable generally cannot be overcome, *see Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). Further, reviewing courts will not conclude that the challenged conduct was deficient unless it "was so outrageous that no competent attorney would have engaged in it." *Garcia*, 57 S.W.3d at 440.

Second, we note that, in reviewing the effectiveness of an attorney, we must consider the totality of the representation. *Perrero v. State*, 990 S.W.2d 896, 899 (Tex. App.—El Paso 1999, pet. ref'd); *see also Strickland*, 466 U.S. at 688 (reasonableness of attorney's performance must be made by considering all circumstances); *Thompson*, 9 S.W.3d at 813 (reviewing court must consider facts of each case). An ineffectiveness claim cannot be established by isolating one part of the attorney's performance for examination. *Perrero*, 990 S.W.2d at 899. The record must affirmatively show that the legal representation was ineffective. *Thompson*, 9 S.W.3d at 813.

At trial, Ismael's attorney cross-examined each of the State's witnesses. In addition, he called four character witnesses, including the victim, to testify on behalf of Ismael. While on the stand, the victim testified that she made up the allegations against Ismael and that she was to blame

11

for the incident. Further, Ismael's brothers testified that Ismael had not been drinking on the night of the assault and that Christina had been making threatening phone calls ever since Ismael's arrest. Moreover, Ismael, Christina, and Christina's father each testified that Christina was taking several medications and that Christina had trouble controlling her temper. Finally, although Ismael contends that his attorney made incorrect objections, his attorney did object to the admission of the protective orders and to some of the testimony concerning the orders as irrelevant. *Cf. Montgomery v. State,* 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (op. on reh'g) (objection that evidence is "irrelevant," although not as precise as it could be, should be sufficient to apprise trial court of complaint that evidence should not be admitted under rule 404(b) as evidence of "other crimes, wrongs, or acts").

Third, we note that Ismael has not shown that his attorney's alleged failures to object were unreasonable. On the contrary, given the evidence before the district court, it was reasonable for Ismael's attorney to have concluded that the evidence in question was admissible. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (to successfully argue attorney's failure to object constituted ineffective assistance, appellant must show that trial judge would have committed error in overruling objection). Regarding the testimony of Officers Ottensmeier and Bryant, it was reasonable for Ismael's attorney to have concluded that the evidence was admissible as an excited utterance.[8] Under rule of evidence 803(2), a "statement relating to a startling event or condition made while the declarant was under stress of excitement caused by the event or condition" may be

---

[8] In his brief, Ismael admits that the State was attempting to lay a predicate for the admission of the officers' testimony under the hearsay exception, but he argues that, due to his attorney's failure to object, the State was not required to demonstrate all the prerequisites for admission. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (proper predicate must be made before hearsay may be admitted).

12

admitted as an exception to the rule against hearsay. Tex. R. Evid. 803(2). While the amount of time between the event and the making of the statements in question is one factor to consider when determining if a statement is admissible under rule 803(2), "the critical factor is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *Ross v. State*, 879 S.W.2d 248, 249 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).

In his testimony, Officer Ottensmeier stated that, when he found Christina, she was upset, extremely nervous, and crying. He also stated that Christina's face was red. He further testified that Christina appeared to be under emotional stress caused by an exciting event that had occurred recently. Similarly, Officer Bryant testified that Christina was upset and that she appeared to have just been involved in an emotional event. In addition, he stated that, because Christina was in such an emotional state, he stayed with her until a crisis counselor arrived.

Further, it was reasonable for Ismael's attorney to conclude that the protective orders and testimony concerning Christina's applying for the orders were not proof of extraneous offenses under rule of evidence 404(b). An extraneous offense is defined as "any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers." *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996). The protective orders were issued in response to the same conduct that Ismael was on trial for and were, therefore, not evidence of extraneous offenses. *But see Macri v. State*, 12 S.W.3d 505, 509 (Tex. App.—San Antonio 1999, pet. ref'd) (evidence that defendant violated protective order issued prior to commission of crime constituted extraneous offense).

13

Regarding the violation of the protective order, the State asked Christina's father if he was aware that Ismael had been convicted of violating the protective order after Christina's father stated that he was unaware of any instance in which Ismael had been violent and that Ismael was a nice man. Therefore, Ismael's attorney could have reasonably concluded that Christina's father's testimony opened the door to cross-examination concerning Ismael's character by referencing specific examples of Ismael's conduct. *See* Tex. R. Evid. 405 (once witness testifies regarding character of accused, witness may be asked about specific conduct on cross-examination).

Moreover, Christina's previous statements to the police and her testimony at prior hearings, including testimony about Ismael violating the protective orders, were admitted only after Christina stated that she made up the allegations against Ismael because she was angry with him and after Christina denied that Ismael had ever violated the protective orders. Accordingly, Ismael's attorney may have reasonably surmised that the inconsistent statements were admissible to impeach Christina's testimony. *See id.* R. 613(a) (allowing proof of prior inconsistent statements by witness to be admitted).

Ismael also has not demonstrated that his attorney's failure to move for a directed verdict was unreasonable. Although Ismael correctly notes that the trial judge indicated he had problems with the sufficiency of the evidence, the judge did not make these comments until the punishment phase of the trial. Accordingly, Ismael's attorney was unaware of any perceived problem the trial judge may have had with the evidence at the appropriate time for moving for a directed verdict. Further, although the trial judge did indicate that he had problems with the evidence, he also stated that his reservations did not rise to the level warranting a new trial, and the judge denied

14

Ismael's motion for a new trial, which alleged, among other things, that the evidence is insufficient. Moreover, as discussed in the next section, we conclude that Ismael's conviction is supported by legally sufficient evidence, and, therefore, Ismael's attorney had a reasonable basis for concluding that it was unnecessary to move for a directed verdict. *Gill v. State,* 111 S.W.3d 211, 217 (Tex. App.—Texarkana 2003, no pet.) (if State introduces more than scintilla of evidence to support conviction, then defense counsel's failure to move for directed verdict is not ineffective assistance of counsel); *cf. Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (failure to grant motion for directed verdict reviewed under legal sufficiency standard).

In addition, Ismael cannot show that, but for his attorney's failure to ask for limiting instructions, the outcome of the trial would have been different. First, the content of Christina's previous inconsistent statements regarding the night of the assault had already been admitted through the testimony of Officers Ottensmeier and Byrant. Therefore, Ismael was not harmed by his attorney's failure to request a limiting instruction specifying that the jury could consider the evidence for impeachment purposes only. Second, as discussed previously, the evidence relating to the issuance of the protective orders was not evidence of an extraneous act, and, therefore, Ismael's attorney committed no error by failing to ask for an instruction prohibiting consideration of this evidence in determining whether Ismael was guilty of the offense charged. Finally, although Ismael's attorney did not request a limiting instruction regarding evidence that Ismael violated the protective orders, the following limiting instruction was provided in the jury charge:

> In reference to evidence that Ismael Romero had participated in assaultive conduct and/or violations of protective orders other than that alleged on August 4, 2000, you are instructed that you can not consider such other conduct or acts, if any, for any

15

purpose unless you find and believe beyond a reasonable doubt that Ismael Romero participated in such conduct or committed such acts, if any; and even then you may only consider the same for the purpose of determining [its] effect, if any, on the state of mind and credibility of Christina Romero, and for no other purpose.

Therefore, Ismael was not harmed by his attorney's failure to request a similar instruction.

After reviewing the totality of Ismael's representation during trial and given that the record is silent regarding his attorney's motivations, we conclude that Ismael has failed to rebut the presumption that his attorney's conduct fell within the range of reasonable professional assistance. *See Thompson*, 9 S.W.3d at 814 (record is silent as to why appellant's trial counsel failed to object to State's attempts to elicit inadmissible hearsay, so appellant has failed to rebut presumption that counsel's actions were reasonable; counsel may have reasonably decided testimony was admissible and, thus, objecting was inappropriate); *see also Mallet*, 65 S.W.3d at 63 (record on direct appeal generally undeveloped and does not adequately reflect attorney's motives). Moreover, Ismael failed to demonstrate that the alleged errors were unreasonable or that, but for the alleged errors, the outcome of the trial would have been different. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006) (defendant entitled to effective assistance of counsel, not perfect assistance). Accordingly, we overrule Ismael's first issue.

**The Evidence is Legally and Factually Sufficient**

In his second issue on appeal, Ismael contends that the evidence is legally and factually insufficient. Ismael argues that the evidence is legally insufficient because proof of the assault was given as testimonial hearsay admitted in violation of the Sixth Amendment right of

16

confrontation.[9] In support of this assertion, Ismael refers to *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the State introduced into evidence a tape of the defendant's wife's statement to the police as evidence that the defendant did not act in self-defense. *Id.* at 40. The Supreme Court concluded that if evidence is testimonial hearsay, the Confrontation Clause requires that the declarant be unavailable and that the accused have had a prior opportunity to cross-examine the declarant before the evidence may be admitted. *Id.* at 68. The Court further concluded that if evidence is nontestimonial hearsay, the Constitution allows states to decide when the evidence may be admitted under their hearsay laws. *Id.* Although the Court did not provide a definition of "testimonial," it did say that, whatever else the term may mean, the word testimonial "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*

We first note that Ismael did not object to the admission of any testimony as a violation of his confrontation rights. *See* Tex. R. App. P. 33.1 (to preserve complaint for appeal, record must show that complaint was made to trial court and that trial court either ruled on or refused to rule on complaint). However, even if the complaint had been preserved for review, the holding in *Crawford* is not applicable to this case. Christina was called to testify on behalf of Ismael and stated that her previous statements to the police were false. Accordingly, because Ismael was provided with the opportunity to question Christina regarding her prior statements to the police and her testimony at prior hearings, there was no Confrontation Clause violation. *See Crawford*, 541

---

[9] Although Ismael does not explicitly state in this section of his brief which testimony he believes was admitted in violation of his Sixth Amendment rights, we will assume that, given his previous characterization of the evidence against him, he is referring to the testimony of Officers Ottensmeier and Bryant.

U.S. at 59 n.9 (Confrontation Clause does not bar admission of statement, even testimonial statement, as long as declarant is present at trial to defend it).

We now turn to the evidence presented at trial. In reviewing the legal sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to verdict and ask whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). When reviewing the legal and factual sufficiency of the evidence, we consider all the evidence, whether it was rightly or wrongly admitted. *Camarillo v. State*, 82 S.W.3d 529, 536 (Tex. App.—Austin 2002, no pet.). In a factual sufficiency review, we must consider all the evidence, but we do not view the evidence in a light most favorable to either party. *Watson v. State*, No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040, *31 (Tex. Crim. App. Oct. 18, 2006); *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997). We will set aside the verdict only if the verdict is "'so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.'" *Id.* at 407 (quoting *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). The standard is the same for direct and circumstantial evidence, and the State may prove its case solely through circumstantial evidence. *Barnes v. State*, 62 S.W.3d 288, 297 (Tex. App.—Austin 2001, pet. ref'd). The jury is the sole judge of the weight and credibility of witness testimony. *Id.* at 298. As the finder of fact, the jury may accept or reject any or all of a witness's testimony, may draw reasonable inferences from the evidence, and must resolve evidentiary conflicts. *Id.*

Ismael was convicted of aggravated assault with a deadly weapon (a firearm). Assault is defined as "intentionally, knowingly, or recklessly caus[ing] injury to another." Tex. Penal Code

Ann. § 22.01(a)(1) (West 2003) (definition of assault). A person commits an aggravated assault if he uses a deadly weapon during the commission of the assault. *See id.* § 22.02(a)(2) (West 2003); *see also id.* § 1.07 (17) (West 2003) (definition of deadly weapon includes firearm). At trial, Christina testified that the statements she made to the police were false. Further, both Christina and Ismael testified that it was Christina who instigated the fight in August 2000. Ismael also denied pointing a gun at Christina or threatening her life. Ismael, Christina's father, and Christina all testified about various medications Christina was taking to control her temper. Further, Ismael's brothers testified that Christina had been making threatening phone calls since Ismael was arrested, and Christina's father testified that he had never seen Ismael act violently toward his daughter.

However, Officer Ottensmeier testified that, when he arrived at the Romeros' house on the night of the assault, Christina told him that Ismael was angry when he came home and was intoxicated. Christina also stated that Ismael threw her through the front door and that she ran to her bedroom to get away from Ismael. She then stated that Ismael came into the bedroom and pointed a gun at her. Officer Bryant also testified that Christina told him that Ismael had threatened her with a gun, and he found a gun lying on the Romeros' bed. Further, evidence was introduced showing that Christina applied for several protective orders as a result of the assault. Portions of her sworn testimony given at a protective order hearing describing the assault were introduced. In addition, Christina's previous testimony indicating that she was afraid of what Ismael would do to her if she did not recant her statements was also introduced. Finally, testimony was also introduced indicating that Christina was afraid that her husband might retaliate against her for having reported him to the police and for filing for the protective orders.

19

Based on the evidence presented at trial, the jury could have reasonably disbelieved Christina's recantation, particularly in light of (1) the fact that she pursued multiple protective orders, (2) witness testimony stating that Christina was afraid of her husband, and (3) Christina's testimony that she was financially dependent on Ismael. Further, given the close family relationship between Ismael and his brothers, the jury could have reasonably disregarded the brothers' testimony. Given Officer Bryant's testimony that he found a gun on the Romeros' bed, the jury could have disbelieved Christina's and Ismael's testimony that Ismael did not remove the gun from the closet. Moreover, given the officers' testimony about Christina's emotional state, the jury could reasonably have believed that Christina's statements to the officers were accurate. Regardless of whether the evidence is viewed in the light most favorable to the verdict, the evidence is sufficient to support Ismael's conviction. Accordingly, we overrule Ismael's second issue on appeal.

## CONCLUSION

Having overruled both of Ismael's issues on appeal, we affirm his conviction.

_____

David Puryear, Justice

Before Justices B. A. Smith, Patterson, and Puryear

Affirmed

Filed:   December 15, 2006

Do Not Publish